SNBB», J.,
delivered the opinion of the Court.
This action is to recover damages for the loss and injury to, two boat loads of lumber which the defendant’s intestate, Joel Peel, in his lifetime, in the summer of 1860, undertook for hire, to carry from Chestnut Bluff on the Forked Deer river, in the county of Dyer, to the city of Memphis. After the boats had proceeded down the river some fourteen miles from the point of departure, they struck some obstruction in the stream, and were ^sunk, which occasioned the loss of some of the lumber and the injury of much of that which .was recovered: the greater part of the lumber was, however, after some weeks’ delay, delivered to the owner and consignee at the city of Memphis. The judgment and verdict below were for the defendant’s intestate.
The defendant’s intestate is sought to be charged as a common carrier, and the main question controverted in the case is, whether in this undertaking he is to be held to the responsibility of a common carrier, or that of a private carrier. There was much testimony submitted to the jury tending to show the alleged negligence of the defendant’s intestate, and his want of skill and prudence in overloading the boats, and in the management *663 thereof as they descended the river, as well as his delay and alleged indifference in rescuing the cargo after the accident. Ye forbear, however, to criti-cise the evidence, or to intimate an impression as to its force and effect. Under the contract, the ■plaintiff was to furnish one of the boats and its crew, and the defendant’s intestate was to furnish the other, and have the command and control of both for the voyage. The larger boat of the two was furnished by the defendant’s intestate, and it seems from the testimony of the witness Jordan, that the defendant’s intestate had constructed the boat' to be used in the transportation of staves. The defendant’s intestate had for many years been a boatman, and was regarded as a very skillful and experienced person in that business, and on account of his accredited skill in navigating those waters, he could command business as a carrier and boatman when no 'one else could. The witness. Harris, thus characterizes his vocation as a boatman: “Peel was a boatman, but worked on his farm long enough after he was married to make a crop. After crops were laid by, he was in the habit of running boats on the river, carrying off lumber, staves, etc. lie run boats for himself and any one else who would employ him. He was an experienced boatman, and could get employment when no one else could.”
The principles announced in the charge of the court defining the distinction between common carriers and private carriers, and the character and de *664 gree of responsibility to which, they are respectively held, are in the abstract correct. But his Honor charged the jury among other things, as follows: “If the defendant had fitted out a flat-boat for the purpose of running the Forked Deer river from Chestnut Bluff to any other point on the Forked Beer river, or on the Mississippi river, for the purpose of carrying freight indiscriminately for others, and receiving pay for the same, he would be a common carrier. But, if the testimony shows that the defendant built a flat-boat for the purpose of shipping staves down the Forked Beer river for himself, and after building the boat, he had abandoned the idea of shipping his own lumber, and entered into a special contract with the plaintiff to ship his load of lumber for him from Chestnut Bluff to Memphis — loaded his boat exclusively with the plaintiff’s lumber, and received or proposed to receive, no other freight, except that of the plaintiff, he would be a private, and not a common carrier.”
We think this portion of the charge, as a whole, is erroneous; and it was, doubtless, such an error under the peculiar facts of this case as most injuriously affected the plaintiff'. It excludes the idea that even in an isolated act, or in occasional acts of carrying, a party may assume all the burdens and responsibilities of a common carrier. It has long been a settled doctrine of the law, that a party may, by express contract, assume, in any act of carrying goods for another, and by any *665 means of transportation, all tlie risks of a common carrier: 2 Kent Com., 778; Robinson v. Dunmore, 2 Bos. & Pul., 416; Brind v. Dale, 8 Carr. & Payne, 207. But the rule bas been extended even further than this, and it was held in the case of Gordon v. Hutchinson, Watts & Serg., 285, that a wagoner who carried goods for hire, was responsible as a common carrier, though transportation was only an occasional and incidental employment; and this case is cited approvingly in a note to 2 Kent, 778, where it is said that it seems to be founded in the better policy as applicable to business in this country. It is true, that common carriers undertake generally, and not as a casual occupation, and for all people indifferently; but in order to make them such, it is not necessary that this should be their exclusive business, or that they should be continuously or regularly employed in it. They may combine it with another and several avocations, and yet be common carriers, and subject to the “ extraordinary . liabilities which have been imposed upon them in consequence of the public nature of their employment, which renders their fidelity a matter of importance to all the community alike:” 1 Smith’s Lead. C., 863. The private carrier is at least liable for his negligence, as it is not to be supposed that a man of ordinary prudence will be guilty of that degree of negligence about' his own affairs as to do himself or his property a serious injury; and he is held to the same degree of care that a prudent man would *666 exercise about bis own affairs. Because ill tbe language of Lord Holt, “it is only a private trust and a particular office, and be doth tbe best be can, as tbe nature of tbe thing puts it in bis power to perform.” Coggs v. Bernard, cited in Ang. on Carriers, 547. And thus says Lord Abinger, “if a man agrees to carry goods for hire, although not a common carrier, be thereby agrees to make good all losses arising from tbe negligence of bis servants:” Brind v. Dale, 8 Carr. & Payne, 207. In Dwight v. Brewster, 1 Pick. R., 50, Ch. Justice Parsons defines a common carrier “to be one who undertakes for hire to transport tbe goods of such as choose to employ him from place to place;” “and this,” bo ’ added, “ might be carried on at tbe same time with other business.” And it is said to be well settled in this country, that a person who undertakes, though it may be only pro hac vice, to act as a common carrier, that is, to carry for hire without special contract, thereby incurs tbe responsibility of a common carrier:” Ang. on Carriers, § 70: And tbe rule in this State is, that one who undertakes for reward to convey produce from one place upon tbe river to another, becomes thereby liable as a common carrier: Turney v. Wilson, 7 Yer., 340; Craig v. Childress, Peck’s R., 270. In tbe case first cited, Judge Green says: “It has been so frequently bolden by this court that one who undertakes for a reward, to convey produce or goods of any sort, from one place upon tbe river to another, becomes liable thereby as a common car *667 rier, that it is unnecessary to do more here than to refer to the eases.” And he cites Craig v. Childress, Peck’s R., 270; Johnson v. Friar, 4 Yer., 48; Gordon et al. v. Buchanan et al., 5 Yer., 71. And so it was held in North Carolina, that freighters for hire upon navigable rivers are to be considered as common carriers, and subject to their liabilities: Williams v. Branson, 1 Murphey’s R., 417. There may be sound reason in holding all river freighters for hire to the responsibility of common carriers, in the fact that in view of the extraordinary perils of a river navigation in this country, he who takes upon himself even the occasional trust of freighting -by the river, thus avouches his own skill in navigation, and trustworthiness as a carrier, and is apt to command the confidence of the community at large. And thus one who would recklessly encounter the perils of a river carrier, without competent skill or knowledge of such navigation, would be guilty of that kind of gross neglect as the trustee of another, which among the Eoman lawyers was called lata culpa, and which was considered equivalent to fraud, and which consists, according to Sir 'William Jones, in the omission of that care and caution which even inattentive and thoughtless men never fail to take of their own property: Ang. Car., § 10. The solution of the question, whether the defendant’s intestate was to be considered as a common carrier or a private carrier, did not depend in any degree upon the fact that he had built a boat for the freighting of his own cargo of staves, and had, at the instance *668 of the plaintiff, abandoned, that project, and contracted to ship the plaintiff’s lumber, nor does it depend upon the fact that he had loaded his boat exclusively with the plaintiff’s lumber, and that he received and proposed to receive no other freight, except that of the plaintiff. And the jury may very well have been misled by the prominence given to these immaterial circumstances in the charge.
The judgment will be reversed, and the cause remanded for a new trial.